UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HASSETT, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 19-8364 |
| v. | : | OPINION |
| BEAM SUNTORY, INC. | : | |
| Defendant. | : | |

This matter is before the Court on a Motion to Transfer [Dkt. No. 6] and a Motion to Dismiss [Dkt. No. 7] filed by Defendant, Beam Suntory, Inc. ("Defendant" or the "Company"). The Court has considered the written submissions of the parties, as well as the arguments advanced at the hearing on November 21, 2019. For the reasons stated on the record that day, as well as those that follow, Defendant's Motion to Transfer [Dkt. No. 6] will be granted. Accordingly, the pending Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) is not considered herein.

I. Background

This case arises out of the failure of an employer to award its employee bonus payments allegedly owed upon his departure from the company. Plaintiff, Timothy Hassett ("Plaintiff" or "Mr. Hassett") entered into an employment agreement ("Letter Agreement") with Defendant on or about June 25, 2014. (Compl. ¶ 9). Plaintiff was employed by Defendant as the Senior Vice President and President of Americas. (Id. at ¶¶ 7,8). At the time Plaintiff was hired, he was residing in New Jersey with his family; Defendant is located in Chicago, Illinois, the location where Plaintiff worked from 2014 through 2017. (Id. at ¶ 4).

According to the Complaint, "[p]ursuant to the Letter Agreement, as Senior Vice President and President of Americas, Mr. Hassett's compensation included but was not limited to the following: (i) a Base Salary in the amount of $500,000, reviewable on an annual basis; (ii) participation in the company's Executive Incentive Plan (EIP) bonus program, also called the Annual Incentive Plan(AIP) program; and(iii) an annual Long Term Incentive award (LTI)." (Id. at ¶ 13). As Senior Vice President and President of Americas, Plaintiff reported directly to the Chairman and Chief Executive Officer, Matthew Shattock ("Mr. Shattock"). (Id. at ¶ 10). "On or about October 2017, Beam issued a Long-Term Incentive Plan (LTI) Award Statement to Mr. Hassett, informing him that his 2015-2017 Award was $1,250,000.00. Upon information and belief, Mr. Hassett's 2017 AIP bonus was valued at approximately $600,000.00)." (Id. at ¶¶ 14-15).

Around the same time, Plaintiff was afforded a position with a different company, and his father became terminally ill. (Id. at ¶¶ 16-17). As a result, Plaintiff advised Mr. Shattock that he intended to leave the Company in early October. (Id. at ¶ 19). According to Plaintiff, "Mr. Shattock asked him to extend his departure date on multiple occasions in order to assist with the transition to Mr. Hassett's replacement and to accommodate Mr. Shattock's schedule." (Id.). He and Mr. Shattock ultimately agreed that he would resign in mid-November and Plaintiff would assist in the transition. "In exchange, Mr. Shattock promised that Mr. Hassett would be entitled to either all or a portion of his LTI and 2017 AIP bonuses." (Id.). Plaintiff alleges that Defendant's "practice was to pay Senior Executive employees both their LTI and AIP bonuses even though such employees were not employed by the Company at year-end." (Id. at ¶ 30).

"Based on" his agreement, Plaintiff decided to forgo his other available leave time under Company policies and the Family Medical Leave Act ("FMLA"). (Id. at ¶ 21).

Before resigning, Plaintiff requested payment of his bonuses; but on the date of his departure, the Company "would not pay him any portion of his LTI and AIP bonuses, on the purported basis that Mr. Hassett was not employed as of December 31, 2017." (Id. at ¶ 23). After his resignation, Plaintiff returned to his home in New Jersey but continued to conduct employee reviews for Defendant at its request. (Id. at ¶ 27).

Plaintiff initiated this action against Defendant on March 11, 2019. [Dkt. No. 1]. Plaintiff's Complaint alleges claims for Breach of Contract (Count I), Good Faith and Fair Dealing (Count II), Unjust enrichment (Count III), and failure to pay wages under Illinois Wage Payment and Collection Act ("IWPCA") (Count IV). On May 15, 2019 Defendant filed a Motion to Transfer this action to the Northern District of Illinois [Dkt. No. 6] and a Motion to Dismiss the Complaint for failure to state a claim [Dkt No. 7] pursuant to Fed. R. Civ. Pro. 12(b)(6). The motions have been fully briefed and the Court heard oral argument on both motions at a hearing held on November 21, 2019.

## II. Standard of Review

Section 1404 provides: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). Analysis under § 1404 is flexible and must be made on the unique facts of each case. Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993). The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The Third Circuit has enumerated a number of private and public factors to be weighed when deciding a motion to transfer venue under § 1404(a).

The private interest factors incorporate the preferences of the parties in the context of the litigation, and include (1) the choice of forum of the plaintiff; (2) the defendant's preference; (3) the ease of access to sources of proof; (4) the convenience of the witnesses-only to the extent that a witness may actually be unavailable for trial in one of the fora; and (4) where the claim arose. The second category analyzes the public interest including (1) practical considerations which could make the litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora. Mendoza v. U.S. Custom & Border Protection, No. 05–6017, 2007 WL 842011, at *3 (D.N.J. March 19, 2007) (citing Jumara, 55 F.3d at 879) (internal citations omitted).

### III. Analysis

As an initial matter, this case could have been brought in the Northern District of Illinois. When jurisdiction is based on the diversity of the parties pursuant to 28 U.S.C. § 1332, such as the present case, a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391. Here, venue would be proper in the Northern District of Illinois because Defendant's headquarters are located in Chicago, and to a large extent, the events giving rise to Plaintiff's claims occurred there. Accordingly, the Court turns to the next inquiry, whether transfer to the Northern District of Illinois would be in the interest of justice and for the convenience of the parties and witnesses.

## A. Private Interests

Defendant argues that the private interests weigh in favor of transfer to the Northern District of Illinois because: (1) Plaintiff's claims arose in the Northern District of Illinois; (2) relevant employee witnesses work in Illinois, (3) related documents are located in Illinois, and (4) Defendant's principal place of business is located in Illinois. (Def. Brf. [Dkt. No. 6-1] at 6-9).

### 1. *Plaintiff's forum Preference and Defendant's forum Preference*

In the Third Circuit, "Plaintiffs' choice of forum is a paramount consideration that should not lightly be disturbed." Clark v. Burger King Corp., 255 F. Supp.2d 334, 338 (D.N.J.2003) (quoting Ayling v. Travelers Prop. Casualty Corp., No. 99–3243, 1999 WL 994403, at *2 (E.D. Pa. Oct.28, 1999)). Unless the defendant can show that the inconvenience to the parties strongly favors another forum, plaintiff's choice of forum should prevail. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). However, courts give substantially less weight to a plaintiffs forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state. See, e.g., NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp.2d 317, 321 (D.N.J .1998); Ricoh Co., 817 F. Supp. at 481–482.

Here, Plaintiff has selected his home forum, New Jersey, to litigate his claims. Plaintiff argues that his choice of forum should be upheld and afforded deference as it is a proper and reasonable choice. Plaintiff has "lived in and was a resident of New Jersey for the entire period of his roughly three-year employment with [Defendant]." (Hassett Decl. ¶ 3). He claims that his family never relocated upon his agreement to work for Defendant in Illinois. Currently, Plaintiff remains a resident of New Jersey, in close proximity to this Courthouse. (Id.).

Defendant prefers, however, to defend this action in the Northern District of Illinois. Defendant is a Delaware Corporation, with its headquarters in Chicago, Illinois. Defendant stresses that the Northern District of Illinois is a more convenient forum than Plaintiff's choice of forum, New Jersey, which "has little connection with the operative facts of the lawsuit." Wm. H. McGee & Co. v. United Arab Shipping Co., 6 F. Supp. 2d 283, 290 (D.N.J. 1997). In that regard, Defendant argues that Plaintiff's choice of forum is not entitled to deference.

The Court would be remiss if it did not acknowledge that the majority of events giving rise to Plaintiff's claims, arose in the state of Illinois. Because the operative facts of this lawsuit have a much greater connection to Illinois, as explained below, Plaintiff's forum preference should be afforded less weight.

### 2. *Where the Claim Arose*

In support of transfer, Defendant's argue that "the events alleged in [Plaintiff]'s lawsuit have virtually nothing to do with New Jersey." (Def Brf. [Dkt. No. 6] at 7). Plaintiff strongly contests that argument. stressing that his permanent residence was at all times New Jersey—where Defendant recruited him from. What is clear in this case, is that all of Plaintiff's claims center around the alleged breach of certain contracts. In a breach of contract case, courts "consider several specific factors that relate to where the claim arose, including (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred." Advanced Technologies and Installation Corp. v. Nokia Siemens Networks US, L.L.C., 2010 WL 3522794, at *8 (D.N.J. Sep. 2, 2010).

There are two potential contracts at issue here. The first contract is Plaintiff's written Letter Agreement. That agreement, an offer of employment with Defendant, was

6

negotiated and executed in the state of New Jersey. (Hassett Decl. ¶¶ 4-5). However, the Letter Agreement was fully performed in Illinois, where Plaintiff was employed. The parties do not dispute that Plaintiff's job necessitated a lot of travel. Plaintiff states that upwards of 40% of his time was spent travelling. (Id. at ¶ 11). As such, approximately 60% of the contract was performed in Illinois. At no time did Plaintiff perform work in New Jersey. Plaintiff alleges that Defendant breached this Letter Agreement by failing to pay him two bonuses, which he claims he was entitled to under the Agreement. The decision not to award Plaintiff any portion of those bonuses occurred in Illinois, therefore, the alleged breach occurred in Illinois.[1] Stalwart Capital, LLC v. Warren Street Partners, LLC, No. 11–5249, 2012 WL 1533637, *4 (D.N.J. Apr. 30, 2012) ("Where a party has [ ] failed to make a payment, the locus of the action is where the party failed [to] take that action rather than where the result is felt." (citing Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994)).

The second basis for Plaintiff's contract claims (and unjust enrichment and IWPA claims) stems from an alleged oral contract. As Defendant suggests, "the focus of Hassett's complaint is a series of conversations and actions that took place in October and November 2017, between the time [Plaintiff] announced his intention to resign from Beam Suntory and his last day of employment with Beam Suntory, all of which took place in Chicago." (Def Brf. [Dkt. No. 6] at 6-7; Compl ¶¶ 18-23). Based on those conversations, Plaintiff claims that he and his CEO formed an oral agreement for

---

[1] Plaintiff alleges that his Letter Agreement of Employment with Defendant entitled him to two bonuses, which Defendant failed to pay Plaintiff at his resignation. This is highly contested by the Defendant, who argues that the 2014 contract did not entitle Plaintiff to the payment of 2017 bonuses. Defendant argues that Plaintiff entered into subsequent agreements pertaining to his AIP and LTI bonuses. Those agreements were entered into in Illinois.

7

payment of his 2017 LTI and AIP bonuses. Accordingly, Plaintiff entered into and executed that agreement in Illinois. According to Plaintiff's complaint, under the alleged oral contract, he would remain with the Company, resign at a later convenient date, and assist in his replacement's transition. Plaintiff performed these promises entirely in Illinois. No part of the contract was performed in New Jersey. Similarly, the alleged breach of the oral contract—the same failure to pay bonuses— occurred in Illinois.

Therefore, this factor weighs in favor of transfer to the Northern District of Illinois where the majority part of events and omissions from which Plaintiff's claims arise, took place. It follows that the heart of Plaintiff's law suit, which resolves around the failure to pay bonuses allegedly owed to Plaintiff, is the Northern District of Illinois, where Plaintiff was employed between 2014 and 2017. McNulty v. J.H. Miles and Co., 913 F. Supp. 2d 112, 119 (D.N.J. 2012) (finding where plaintiff's claims arose outside of New Jersey, this factor "weighs heavily in favor of transfer").

### 3. *Convenience of the Parties and Witnesses & Location of Books and Records*

In its opposition to transfer Plaintiff contends that Defendant is simply attempting to shift any inconvenience in litigating in this venue to Plaintiff. To be sure, under the circumstances in this case, either forum would create some type of inconvenience for either party, and "[t]ransfer is not about shifting inconvenience from the party being sued to the party suing." Quintiles IMS Inc. v. Veeva Sys., Inc., No. CV 17-177, 2017 WL 2766166, at *5 (D.N.J. June 23, 2017). In considering the "convenience of the parties" district courts should focus on the relative physical and financial condition of the parties. See Jumara, 55 F.3d at 879.

Plaintiff represents that he is just one individual while Defendant is a global corporation—one that conducts business in the State of New Jersey, and derives revenue from its products sold here. As such, Defendant's resources are vast, while Plaintiff has more limited finances and resources to litigate this case in Illinois. In his declaration, Plaintiff avers that he has "no counsel in the Northern District of Illinois and [he] no longer ha[s] any ties to the State of Illinois." (Hassett Decl. ¶ 8). Meanwhile, he argues Defendant's outside counsel, who practices in New Jersey, maintains a New York office. In sum, Plaintiff claims that the transfer of this case would cause him more hardship. (Id. at ¶ 9).

Defendant argues that Plaintiff, as evidenced by his documented compensation, is a wealthy individual whose burden in travelling to Illinois, if necessary, would be de minimis. While Plaintiff may, in fact, be well off, and maintain a high position in a large corporation as of date, the Court acknowledges that litigating in Illinois will weigh more heavily on him. Therefore, the convenience of the parties weighs against transfer.

Next, Defendant submits that key employee witnesses and documents relevant to the proofs in this litigation are present in Illinois. Notably, Mr. Shattock remains employed and living in Illinois, along with other potential employee witnesses. Though these witnesses are central to the issues presented, "[Defendant] has not shown the unavailability of these witnesses in New Jersey. There is no indication that 'any witnesses would be unable or unwilling to travel to [this District], which is the sole relevant consideration for this factor.'" MaxLite, Inc. v. ATG Elecs., Inc., 193 F. Supp. 3d 371, 394 (D.N.J. 2016) (citing Jumara, 55 F.3d at 879). Plaintiff names three past executive employees, who would testify, that do not reside in Illinois. Two of these individuals reside in New York (Hassett Decl. ¶ 10); and the third, resides in California.

9

While New Jersey appears more convenient, if not just as convenient, for these non-party witnesses, Plaintiff also fails to represent that his witnesses are <u>only available</u> in the New Jersey forum. Similarly, the fact that the documents pertinent to the case are located in Illinois, albeit true, is inapposite, as they could easily be produced "in the age of electronic discovery." <u>Id.</u>; <u>see</u> <u>also</u> <u>Jumara</u>, 55 F.3d at 879 (limiting convivence of location of books and records "to the extent that the files could not be produced in the alternative forum"). Therefore, with regard to witness convivence and location of records, the Court finds that neither forum is more convenient than the other. As to transfer, these factors are neutral.

### B. Public Interests

Defendants argue that the public interest factors favor transfer because the Northern District of Illinois (1) "is significantly less congested than the District of New Jersey" (2) "has a significant local interest in the case," and (3) is the court that is most familiar with the applicable law of the case.

1. *Court Congestion and Administrative Difficulties*

It is clear that both Districts have large civil dockets. (Def. Brf. [Dkt No. 6-1] at 9). This District, however, is more "congested" than the Northern District of Illinois to the extent that the District of New Jersey has more pending cases than the Northern District of Illinois. "For the 12-month period ending December 31, 2018, the total number of cases pending in the District of New Jersey was 11,210, compared with 8,087 for the same period in the Northern District of Illinois." (Def. Brf. [Dkt. No. 6-1] at 9-10 (citing U.S. COURTS, U.S. DISTRICT COURTS—MEDIAN TIME INTERVALS FROM FILING TO DISPOSITION OF CIVIL CASES TERMINATED, BY DISTRICT AND METHOD OF DISPOSITION, DURING THE 12-MONTH PERIOD ENDING DECEMBER 31, 2018)). Still, this District has a shorter disposition

rate for civil cases. (Pl. Brf. at 13). "For the 12-month period ending March 31, 2019, the median time interval from filing to disposition in civil cases in the District of New Jersey was only 5.1 months. In the Northern District of Illinois, for the same time period, the median time interval from filing to disposition in civil cases was 7.9 months." (Id. (citing U.S. DISTRICT COURTS – COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT STATISTICS (MARCH 31, 2019))). Therefore, Court congestion is neutral to transfer, and the parties do not further argue that either court will experience any administrative difficulties.

2. *Local Interest in Resolving Local Controversies*

Illinois' local interest in resolving this controversy is very apparent. Defendant is a corporation headquartered in Chicago and Plaintiff asserts a statutory claim under Illinois law. Defendant further contends that "[Plaintiff] worked throughout his employment in Chicago and his claims don't fall within the scope of New Jersey laws and, in turn, New Jersey has no local interest in resolving this controversy." (Def. Brf. [Dkt. No. 6-1] at 10). In contrast, Plaintiff argues that Defendant reached into the State of New Jersey to recruit him, "and made promises to him in the Letter Agreement that it is now refusing to honor." (Pl. Brf at 14). The Court cannot find that New Jersey has "no" interest in this case, as not only did Defendant recruit Plaintiff from New Jersey but Defendant was compensating Plaintiff who was paying New Jersey taxes on those wages and bonuses earned. At oral argument, Plaintiff further reasoned that New Jersey has an interest in this case, as it has an interest in providing its residents, who work out of state, with a forum to resolve employment disputes. Nonetheless, Illinois maintains a greater interest in removing this controversy. Within the United States, Plaintiff worked exclusively out of Illinois, where he maintained an apartment, and where Defendant's

11

principal place of business is located. The majority of Plaintiff's claims arise out of an alleged oral contract entered into and executed in Illinois, and all of Plaintiff's claims center on the failure to pay plaintiff certain bones, which occurred in Illinois. Furthermore, now Plaintiff brings claims under that state's law. Simply put, New Jersey is not the state in which the "locus of the majority of the relevant conduct" took place. See Ferratex, Inc. v. U.S. Sewer & Drain, Inc., 121 F. Supp. 3d 432, 442 (D.N.J. 2015) ("As the agreements here transpired primarily in New Jersey and not in Pennsylvania, the Eastern District of Pennsylvania has little local interest in adjudicating this dispute despite the Pennsylvania residencies of Defendants." (emphasis added)). Thus, the Court finds Illinois has a greater local interest in the resolution of this matter, despite Plaintiff's residence in this district.

3. *Law of the Case*

Here, there is a dispute regarding what state law is applicable to Plaintiff's claims. Specifically, Plaintiff does not concede that Illinois law will apply to all of his claims— apart from his statutory claim—and argues that applying the law of a different state regularly occurs in federal Court. Quintiles IMS Inc. v. Veeva Sys., Inc., No. CV 17-177 (CCC), 2017 WL 2766166, at *6 (D.N.J. June 23, 2017) ("[T]he parties disagree whether New Jersey or California law will ultimately apply in the case, but it makes little difference, as a federal judge in either state can apply the law equally."). Under the circumstances, the Court finds that despite which state law applies, this factor has little weight. See Saland Stacy Corp. v. Freeney, No. CIV.A. 11-3439, 2012 WL 5451522, at *7 (D.N.J. Nov. 5, 2012) ("[Defendant] argues that it will be easier for California courts to apply California law, but federal courts are accustomed to applying the law of various states, and this factor has little weight.").

12

IV.     Conclusion

In sum, the Court finds that the Northern District of Illinois is the district in which the substantial events giving rise to Plaintiff's claim arose, and the district with the greater interest in resolving this case. Though Plaintiff may be inconvenienced in travelling to Illinois, to an extent, this Court has previously acknowledged that the "fact that Defendant has substantially more resources than Plaintiffs should not be the sole reason for refusing a transfer." Santi v. Nat'l Bus. Records Mgmt., LLC, 722 F. Supp. 2d 602, 608 (D.N.J. 2010) (citing Nat'l Mortgage Network, Inc. v. Home Equity Ctrs., Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988)). Moreover, like in Santi, and under the circumstances of this particular case, New Jersey has little connection to Plaintiff's cause of action other than the fact that it is Plaintiff's state of residence. See McNulty, 913 F. Supp. 2d at 124. To reiterate, Plaintiff was employed by Defendant at its headquarters in Illinois, Plaintiff reported to the CEO in Illinois (who remains in Illinois), performed under his contract(s) in Illinois; and furthermore, all relevant conversations and, importantly, any failure to pay Plaintiff his bonuses occurred in Illinois. Therefore, considering all of the relevant private and public interest factors, the Court finds that the convenience of the parties and interest of justice weighs in favor of transferring this case to the Northern District of Illinois. For these reasons, the Court will grant Defendant's Motion to Transfer [Dkt. No. 6].

Accordingly, because Defendant's Motion to Transfer this case to the Northern District of Illinois will be granted, the Court declines to decide "any other issues presented in the motion to dismiss, which should be decided by the transferee court." Gianakis v. Hilton Tucson El Conquistador Golf and Tennis Resort, No. 12–4268, 2012 WL 5250463, at *4 (D.N.J. Oct. 22, 2012). Therefore, the Court will refer the pending

Motion to Dismiss [Dkt. No. 7] under Fed. R. Civ. Pro. 12(b)(6) to the transferee court. See McNulty, 913 F. Supp. 2d at 124.

An appropriate Order shall follow.

Dated: December 18, 2019

                                               /s/ Joseph H. Rodriguez
                                                    JOSEPH H. RODRIGUEZ
                                               United States District Judge